No. 18-2298

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————————

UNITED STATES OF AMERICA,

Appellee

v.

GREGORY JOHN SCHAFFER,

Appellant

**Appeal from the Final Judgment in a Criminal Case of the United States District Court for the District of New Jersey (Crim. No. 13-183).   Sat Below:   Honorable Jose L. Linares, U.S.D.J.**

———————————————————————————————

### BRIEF FOR APPELLEE

———————————————————————————————

CRAIG CARPENITO
UNITED STATES ATTORNEY
Attorney for Appellee
970 Broad Street
Newark, New Jersey 07102-2535
(973) 645-2700

On the Brief:

RICHARD J. RAMSAY
Assistant U.S. Attorney
(973) 645-2712

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .............................................................. iii

TABLE OF ABBREVIATIONS .......................................................... vii

JURISDICTIONAL STATEMENT......................................................... 1

STATEMENT OF THE ISSUES ......................................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ................................... 2

STATEMENT OF THE CASE ........................................................... 2

I.    FACTUAL BACKGROUND ......................................................... 2

    A.    Schaffer's Predatory Conduct ...................................... 2

    B.    Federal Investigation and Discovery of Child Pornography ......... 5

II.   PROCEDURAL HISTORY ......................................................... 7

    A.    Indictment and Pre-Trial Evidence Storage ........................ 7

    B.    Pre-Trial Motions ................................................ 9

    C.    Jury Trial, Motion for Judgment of Acquittal, Conviction
        and Sentencing .............................................. 13

SUMMARY OF ARGUMENT......................................................... 15

ARGUMENT ............................................................................ 18

I.    THE RECORD BEFORE THE DISTRICT COURT CONTAINED
      CREDIBLE, UNCONTESTED EVIDENCE SUPPORTING THE GOVERNMENT'S
      DENIAL OF BAD FAITH.................................................................. 18

      A.    Legal Standard ....................................................... 19

      B.    Schaffer Does Not Contest The Findings That His Laptop
            Lacked Ascertainable Exculpatory Value And That The
            Information Contained On It Was Preserved In A
            Comparable And Accessible Form ............................................ 21

      C.    The District Court's Determination That The Government
            Did Not Act In Bad Faith Was Correct..................................... 23

      D.    Schaffer's Request For An Evidentiary Hearing Was
            Properly Denied ....................................................... 34

II.   SUBSTANTIAL TRIAL EVIDENCE ESTABLISHED, BEYOND A
      REASONABLE DOUBT, THAT SCHAFFER REPRODUCED CHILD
      PORNOGRAPHY ON HIS LAPTOP AND EXTERNAL HARD DRIVE ........... 35

      A.    Legal Standard ....................................................... 36

      B.    Evidence That Schaffer Exercised Exclusive Control Both
            Over The Videos And Images He Created And Over The
            Electronic Devices He Used Proves That He Produced
            Child Pornography ................................................... 37

CONCLUSION ......................................................................... 47

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arizona v. Youngblood*,
   488 U.S. 51 (1988) ..............................................................passim

*Brady v. Maryland*,
   373 U.S. 83 (1963) ................................................................. 19

*California v. Trombetta*,
   467 U.S. 479 (1984)..............................................................passim

*Cohen v. U.S.*,
   378 F.2d 751 (9th Cir. 1967) .................................................... 34

*Coleman v. Johnson*,
   566 U.S. 650 (2012).................................................................. 37

*Illinois v. Fisher*,
   540 U.S. 544 (2004)...........................................................20, 21

*Jackson v. Virginia*,
   443 U.S. 307 (1979)................................................................. 36

*Nardone v. U.S.*,
   308 U.S. 338 (1939)................................................................. 34

*Rivera-Muriente v. Agosto-Alicea*,
   959 F.2d 349 (1st Cir. 1992)..................................................... 32

*U.S. v. Anderskow*,
   88 F.3d 245 (3d Cir. 1996)..................................................36, 42

*U.S. v. Antoon*,
   933 F.2d 200 (3d Cir. 1991) .................................................... 24

*U.S. v. Beckstead*,
   500 F.3d 1154 (10th Cir. 2007) ............................................... 18

*U.S. v. Brennan,*
   994 F.2d 918 (1st Cir. 1993) ................................................................... 32

*U.S. v. Brink,*
   39 F.3d 419 (3d Cir. 1994) ..................................................................... 34

*U.S. v. Brodie,*
   403 F.3d 123 (3d Cir. 2005) ................................................................... 37

*U.S. v. Burdulis,*
   753 F.3d, 255 (1st Cir. 2014) .................................................................. 38

*U.S. v. Caraballo-Rodriguez,*
   726 F.3d 418 (3d Cir. 2013) ............................................................ passim

*U.S. v. Cartwright,*
   359 F.3d 281 (3d Cir. 2004) ................................................................... 39

*U.S. v. Deaner,*
   1 F.3d 192 (3d Cir. 1993) ....................................................................... 20

*U.S. v. Dennison,*
   No. 2:13CR-805-DAK, 2014 WL 7140044 (D. Utah Dec. 12, 2014) ..... 30, 31

*U.S. v. Dent,*
   149 F.3d 180 (3d Cir. 1998) ................................................................... 37

*U.S. v. Fema,*
   9 F.3d 990 (1st Cir. 1993) ...................................................................... 20

*U.S. v. Gambone,*
   314 F.3d 163 (3d Cir. 2003) ................................................................... 36

*U.S. v. Gonzalez,*
   918 F.2d 1129 (3d Cir. 1990) ................................................................. 41

*U.S. v. Iafelice,*
   978 F.2d 92 (3d Cir. 1992) ..................................................................... 42

*U.S. v. Jackman,*
   72 F. App'x 862 (3d Cir. 2003) ......................................................... 20, 24

iv

*U.S. v. Jackson,*
   849 F.3d 540 (3d Cir. 2017) ................................................................. 33

*U.S. v. Johnson,*
   302 F.3d 139 (3d Cir. 2002) ................................................................. 36

*U.S. v. Koch,*
   625 F.3d 470 (8th Cir. 2010) ................................................................ 40

*U.S. v. Lively,*
   852 F.3d 549 (6th Cir. 2017) ..........................................................passim

*U.S. v. Lowe,*
   795 F.3d 519 (6th Cir. 2015) ....................................................... 42, 44, 45

*U.S. v. McNealy,*
   625 F.3d 858 (5th Cir. 2010) ..........................................................passim

*U.S. v. Pelullo,*
   173 F.3d 131 (3d Cir. 1999) ................................................................. 23

*U.S. v. Prange,*
   771 F.3d 17 (1st Cir. 2014) .................................................................. 32

*U.S. v. Schaffer,*
   851 F.3d 166 (2d Cir. 2017) ................................................................... 7

*U.S. v. Suarez,*
   Crim. No. 09-932 (JLL), 2010 WL 4226524 (D.N.J. Oct. 22, 2010)......29, 30

*U.S. v. Vaughn,*
   Crim. No. 14-23 (JLL), 2015 WL 6948577 (D.N.J. Nov. 10, 2015) ........... 29

*U.S. v. Voigt,*
   89 F.3d 1050 (3d Cir. 1996) ................................................................. 34

*U.S. v. Zaragoza-Moreira,*
   780 F.3d 971 (9th Cir. 2015) ..........................................................passim

## Statutes

18 U.S.C. § 2251(a) .............................................................................passim

18 U.S.C. § 2252(a) .................................................................................. 44

18 U.S.C. § 2252A(a)(5)(B)........................................................................ 7

18 U.S.C. § 3231 ......................................................................................... 1

28 U.S.C. § 1291 ........................................................................................ 1

## Rules

Fed. R. App. P. 28(a)(8)(A) ...................................................................... 33

Fed. R. Evid. 1003 .................................................................................... 10

## Other Authorities

*Blood, Bad Blood, and Youngblood:  Due Process, Lost Evidence, and the Limits of Bad Faith*, 86 WASH. U. L. REV. 241 (2008) ........................................... 21

Nat'l Ass'n of Fugitive Recovery Agents, FAQ, *available at* www.fugitive-recovery.org/faq.htm (last visited on Dec. 4, 2018).............................. 40–41

# TABLE OF ABBREVIATIONS

"DB"        refers to Defendant's Brief.

"DE"        refers to the to the docket entry in the District Court.

"PSR"       refers to the Pre-Sentence Report filed by the United States under
            seal with this Court.

"SA"        refers to the Supplemental Appendix supplied by the United States.

"StR"       refers to the Statement of Reasons filed by the United States under
            seal with this Court.

## JURISDICTIONAL STATEMENT

Gregory John Schaffer appeals his conviction, after a jury trial, for production and possession of child pornography.   The United States District Court for the District of New Jersey (Hon. Jose L. Linares, U.S.D.J.) had subject matter jurisdiction under 18 U.S.C. § 3231.   This Court has jurisdiction to review the conviction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1) Should the determination that the Government did not lose Schaffer's child pornography-containing laptop in bad faith, and the derivative conclusion that Schaffer's due process rights were not violated on account of that loss, be affirmed where credible evidence established that the laptop lacked exculpatory value, all of the information contained in it had been preserved in a duplicate created of the hard drive long before the laptop's disappearance, and the agents and prosecutors who handled the original laptop took meticulous steps to safeguard it while it was being used in a prior federal trial against Schaffer?

(2) Did substantial evidence exist to convict Schaffer of producing child pornography on his laptop and external hard drive where the physical evidence admitted at trial and testimony provided by the victims revealed that Schaffer created and exercised exclusive control over the depictions in question, and

where a search of Schaffer's devices revealed that Schaffer exercised exclusive
control over both devices?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The United States is not aware of any related cases or proceedings.

## STATEMENT OF THE CASE

**I.    FACTUAL BACKGROUND**

**A.    Schaffer's Predatory Conduct**

Schaffer's niece, Allison, was only 12 years old and her friend, Ashley,
only 14 when Schaffer molested them.    SA478, 483–84.    The abuse took
various forms, but typically involved isolating the girls—usually one at a
time—in his Jersey City tow truck office, a hotel room, or a room at his house.
SA468, 478, 481–84; *see* SA467, 473 (describing similar conduct with a third
victim).    He would force them to pose nude or try on bathing suits, and he
would make them perform various prurient or outright sexual acts—all under
threat of physical force or blackmail.    SA479–85.    On one occasion, he
isolated Allison in a hotel room and threatened to have her mother arrested if
she left the room without his permission.    SA482.    On another occasion, he
brought both girls to the upstairs bathroom in his home and threatened to

2

detonate a stick of dynamite if they didn't rub his penis "up and down."
SA482, 484.

Sometimes Schaffer would record the abuse.   PSR ¶ 90.   In 2010, for
example, he lured his niece to his tow truck office, forced her to undress and,
unbeknownst to her, videotaped her as he masturbated between her legs,
ejaculated on her vagina, and "attempted to choke or smother" her with a rag
that had a nauseating odor.   SA437, 439–41, 479–80.   That same year,
Schaffer isolated Ashley in a hotel room, took nude photographs of her, and
videotaped her as she tried on a bathing suit and as he fondled her inner thigh,
breasts and vagina.   SA451–54, 470–71, 483–85; DE36, at pp. 5–6 (describing
Government Exhibit 405, the video of Schaffer's encounter with Ashley on the
hotel room bed); PSR ¶¶ 22–25.   He instructed Ashley not to tell anyone what
happened.   SA452–54 (playing video excerpt marked as Government Exhibit
405D).[1]   Schaffer does not dispute inflicting, filming or photographing any of

---

[1] The following exchange took place towards the end of the encounter:

SCHAFFER:   Um oh one other last thing.

ASHLEY:  Yea.

SCHAFFER:   Ok, I have I usually have a policy um you know
things we talk about nobody else finds out about, you understand?

3

this abuse.    DB17 ("Schaffer concedes that he took the images and even

participated in the inappropriate encounters with Al[l]ison and Ashley.").[2]

After capturing the girls on camera, Schaffer loaded the files onto his

laptop computer—in multiple locations on the hard drive—and backed those

files up on an external hard drive.    SA450, 458–59.    This conduct Schaffer

disputes.    DB15–17.    Far from a coincidence, however, the laptop's user had

created a password-protected account with the username "Greg," and the

---

ASHLEY:  Uh huh.

SCHAFFER:    So you know that's, that's why you know Jennifer
and anybody else whenever they talk to me they talk to me because
they know I'm not going around saying anything.    You can sit
there and tell me you want to shoot your mother and I ain't saying
nothing to them.    You know?

ASHLEY:  I'm not sure I would shoot my mother.

SCHAFFER:    (Inaudible)

SCHAFFER:    Alright.

Government Exhibit 405D.

[2] Prosecutors in Hudson County, New Jersey, charged Schaffer with
nine counts of various terrorist and child-related sexual assault crimes.    PSR
¶ 106.    As of the date of Schaffer's final Pre-Sentence Report, issued on
January 24, 2018, the charges remained pending in Hudson County.    *Id.*

account itself contained a Verizon bill addressed to Schaffer at his business

address, a state-issued sales tax permit in Schaffer's name, and several photos

of Schaffer, including one depicting him wearing a Navy uniform.   SA430,

433–36.   That same photo also appeared on the external drive.   SA458–59.

### B.    Federal Investigation and Discovery of Child Pornography

Federal agents did not learn of Schaffer's exploitation of Allison and

Ashley until June 3, 2012, after Schaffer logged into his account for the last

time.   SA433–34, 473–74.   That day, agents surprised Schaffer at his tow

truck office with a search warrant in hand.   SA468–69.   Agents had obtained

the warrant as part of an unrelated investigation into a report that he had

sexually assaulted a 15-year-old girl from Brooklyn.   SA467, 473–74; PSR ¶

102.[3]   During the search, Special Agent Robert Mancene and other agents of

the Department of Homeland Security's Homeland Security Investigations

("HSI") unit seized a number of electronic devices, including two digital

cameras, a laptop and an external hard drive.   SA3, 80–85, 469.   After agents

arrested Schaffer, the devices were stored in a secure evidence locker while the

---

[3] As discussed *infra* p. 7, that conduct was eventually prosecuted in the
Eastern District of New York, Docket No. 12-cr-430-ARR.   SA94–95; PSR
¶¶ 12, 102.

investigation continued and until a warrant authorizing their search could be obtained.   SA2, 416–20, 422–25, 427, 471, 475.

On July 30, 2012, an HSI agent hand-delivered the devices to U.S. Secret Service Special Agent John Simonello, a digital forensics expert, for analysis. SA22–23, 86–87, 419–20, 422–24.   Agent Simonello did not begin his examination until July 31, however, the day he received a warrant authorizing him to search the devices.   SA87, 426–27.   Before examining the laptop and external drive, he made an exact copy—*i.e.*, a forensic image—of each of them. SA87–88, 427–29.   He then conducted his analysis on those copies.   SA88, 430–32.

Agent Simonello's examination revealed Schaffer's collection of images depicting child sexual exploitation, which had been loaded on both devices. SA455, 459.   The collection included five sexually explicit videos of Allison and Ashley, nude photographs of Ashley, and at least 85 other videos of underage boys and girls engaged in sexual activity.   SA455–56; PSR ¶ 26.[4]

---

[4] The additional videos were the equivalent of 6,375 images of child sexual exploitation.   PSR ¶ 44.

6

## II.    PROCEDURAL HISTORY

### A.    Indictment and Pre-Trial Evidence Storage

A federal grand jury in New Jersey heard evidence of Schaffer's predatory conduct and, on March 13, 2013, returned an indictment charging him with two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).   SA241.   Schaffer pled not guilty to the indictment.

In July 2014, while awaiting trial in New Jersey, Schaffer stood trial in the Eastern District of New York for an indictment (that pre-dated the indictment in this case) charging him with sexually assaulting the 15-year-old girl from Brooklyn.   SA94–96, 473–74; PSR ¶ 102.   Prosecutors there called Agents Mancene and Simonello to testify about recovering and imaging Schaffer's laptop computer.   SA95.   During their testimony, the government admitted the laptop into evidence as well as a report corroborating that an exact forensic image of the laptop had been made.   *Id.*

Schaffer did not object to use of the forensic image or to Agent Simonello's testimony regarding his examination of it.   *Id.*   In fact, Schaffer apparently never even hired an expert to examine the laptop once it was

seized.   SA26.[5]   After trial, which ended on July 9, 2014, the physical

evidence, including the laptop, was placed in an evidence room at the

E.D.N.Y.-U.S. Attorney's Office while Schaffer appealed his conviction to the

Second Circuit.   SA3, 80–84, 95–96, 474–75.[6]

In January 2017, while Schaffer's appeal was still pending in the Second

Circuit, prosecutors from the District of New Jersey requested the physical

evidence from his E.D.N.Y. case, including Schaffer's laptop.   SA3, 82–83,

96; *see* SA475.   Agent Mancene attempted to collect the evidence from the

E.D.N.Y.-U.S. Attorney's Office in Brooklyn but could not find the box

containing the laptop and two video cameras recovered from Schaffer's office.

SA3, 80–85, 475.[7]   Despite the Government's best efforts, which included

enlisting the help of a criminal investigator, the box could not be located.

SA3, 80–101.

---

[5] That information came to light on February 14, 2017, when the District Court in New Jersey inquired whether Schaffer had used a forensic expert in preparation for his defense in the Brooklyn case.   SA26.

[6] The Second Circuit affirmed Schaffer's conviction on March 15, 2017. *U.S. v. Schaffer*, 851 F.3d 166 (2d Cir. 2017).   None of Schaffer's claims challenged the admission of his laptop or the authenticity of its contents.

[7] Before the cameras turned up missing, agents had already searched them and determined that they contained no child pornography.   SA3, 29–30.

### B.   Pre-Trial Motions

Given the laptop's disappearance, the Government moved *in limine* to admit the contents of the duplicate image.   SA1–7.[8]   As part of its request, the Government also asked the District Court for a ruling that the loss of the laptop did not violate Schaffer's due process rights—a finding that required the court to determine that the Government did not act in bad faith.   *Id.*   The Government supported its motion with sworn declarations from Agents Mancene and Simonello, a chain-of-custody receipt for the laptop, and an affidavit from the Assistant U.S. Attorney who tried the E.D.N.Y. case and explained the circumstances surrounding his discovery that the laptop was missing.   SA80–101.

Schaffer objected to admission of the copy, but for reasons related to authenticity and not related to bad faith.   SA102.   In fact, through counsel, Schaffer assured the court that he "d[id] not question the veracity of [the Government's sworn] statements as it pertains to the laptop's loss" and that "it

---

[8] Like the prosecutors in the Eastern District of New York, the Assistant U.S. Attorneys in the District of New Jersey would have relied on the duplicate image of the laptop regardless of whether the original was available for marking and admission because the videos and images presented to the jury were downloaded from the forensic duplicates, not from the originals.

[wa]s clear that the government did not act in 'bad faith' when it lost the laptop."   SA102.

Following oral argument on the matter, Judge Linares granted the Government's motion in a written opinion on February 24, 2017.   SA22–44, 103–23.   Consistent with the Government's motion, the court found that Schaffer's due process rights had not been violated by the loss of the laptop because:   (1) There was no indication that the laptop contained exculpatory information; (2) the evidence was not irreplaceable given that a forensic image of the internal drive was available and could be authenticated; and (3) the Government did not act in bad faith.   SA120–21.[9]

Four days before jury selection (and on the same day that the District Court issued its opinion), Schaffer sought permission to fire his then-counsel from the Federal Public Defender's Office.   DE38, 49, 51.   Judge Linares granted his request, appointed new counsel, and permitted new counsel to file pre-trial motions.   DE55.   He admonished counsel not to rehash issues pertaining to the admissibility of the image created of the laptop drive, but

---

[9] The court also found that Schaffer had not, as Fed. R. Evid. 1003 requires, raised a genuine question about the authenticity of the original laptop or demonstrated that it would be unfair to admit the duplicate.   SA121.

Schaffer's new attorney (the same attorney who represents Schaffer on appeal) moved to exclude it anyway.    SA124–78.

The alleged bases for excluding the image were reminiscent of Schaffer's original attempt at suppressing it.    First, as part of his bad faith argument, Schaffer accused the Government's agents of conducting an investigation that was marred by "irregularities" related to the analysis performed of his laptop in 2012 but unrelated to the loss that occurred in 2014 at the earliest.    SA207, 210–12, 373, 378–79.    Losing the laptop only compounded that misconduct, he argued, and provided the evidence he needed to show that the Government mishandled his laptop in bad faith.    SA219–21.    Second, Schaffer challenged the authenticity of the drive based on his own lay observations, but neither of the experts he hired defended that allegation.    SA36–38, 226–27, 388–89.[10]

Schaffer also moved to exclude his external drive, which the Government noticed that it would use at trial.    SA199–235.    The primary

---

[10] According to Schaffer's original attorney, the first expert concluded: "[W]e don't really have a problem here.    I can't tell anything from what your client has annotated [to the imaging report]."    SA37.    The expert claimed that he could reach no additional conclusions about the laptop without the original drive.    SA37–38.    The second expert, hired by new counsel, provided sworn certifications that at best contained general statements about the imaging process and nothing more.    *See* SA226, 388–89.

11

basis for the request was Schaffer's belief that agents searched his laptop before obtaining a warrant and that the external drive was physically connected (by a cable) to the laptop at the time of seizure, rendering the two devices "one computer."   SA221–22, 364–65.[11]   Given that connection, he speculated that both devices were similarly connected when agents purportedly searched his laptop without a warrant.   *Id.*   In his mind, any illegal search of the laptop was also an illegal search of the external drive and thus a logical basis for excluding both.   SA222, 398.   Schaffer requested a hearing on all of these suppression issues.   SA375–76, 383, 386.

Judge Linares heard oral argument on Schaffer's motion and denied it without holding an evidentiary hearing.   SA359–71, 390–99.   In a written opinion issued on October 12, 2017, he reaffirmed his decision to permit

---

[11] Schaffer believed that because the affidavit used to support the warrant for searching his devices contained references to photographs of teenage girls in bathing suits, the agents must have looked inside his laptop before obtaining proper authorization.   SA394–95.   The Government explained that the conclusion was erroneous because the referenced photographs existed in hard copy and were visible to the agents when they searched his office.   SA367–68, 394–96.   As the District Court held, the agents were allowed to seize the photos without a warrant because they observed the photos in plain view while they were lawfully present inside Schaffer's office.   *Id.*

introduction of the duplicate laptop image.    SA390–99.   He did not revisit

any due process or bad faith arguments arising from the laptop's loss.    *Id.*

Judge Linares also permitted introduction of Schaffer's external hard drive

because Schaffer could not substantiate his assertion that agents had searched

the drive without a warrant.    SA398–99.[12]

### C.    Jury Trial, Motion for Judgment of Acquittal, Conviction and Sentencing

At trial, eight witnesses testified for the Government:    Allison (SA478–

83); Ashley (SA483–85); Special Agent Mancene (SA465–77) and a fellow

agent who helped execute the warrant to search Schaffer's office (SA414–21);

the agent who transported Schaffer's devices to Special Agent Simonello

(SA421–25); Agent Simonello himself (SA425–41, 446–61); and record

custodians from the companies that manufactured Schaffer's laptop and

external drive (SA462–65).   Although the Government did not introduce the

physical copy that had been made of the laptop drive, it adduced testimony

from Agent Simonello authenticating the duplicate and disclosed, through

Agent Mancene, that the original went missing after it was used at a prior trial

---

[12]  After appointing new counsel, the District Court gave Schaffer an
additional seven months to prepare for trial.   DE55–79.   Still, Schaffer came
up empty-handed.

against Schaffer.    SA427–29, 475.    The Government did, however, mark and introduce Schaffer's external drive and presented evidence that the original laptop and the external drive had traveled in interstate or foreign commerce, as required by statute.    SA406, 462–65.

Having authenticated the duplicate laptop drive and the original external drive, the Government presented clips and screenshots of certain footage retrieved from the drives, as well as several photographs that had been stored on them.    SA37, 439–41, 451–54, 483–85.    Additionally, the Government presented evidence—through Ashley, Agent Mancene, and Agent Simonello—that Schaffer created these depictions and loaded them onto his laptop and external drive.    *See infra* pp. 40–42, 44–46.

At the close of the Government's case, Schaffer moved for a judgment of acquittal on Counts 1 and 2, the production of child pornography counts. SA485–89.    Schaffer argued that the Government could not satisfy 18 U.S.C. § 2251(a)'s interstate commerce requirement because it did not present evidence that he was the one who loaded the video and image files of Allison and Ashley onto his laptop and external hard drive.    *Id.*    Judge Linares denied the motion in a written opinion based on circumstantial evidence that proved that fact.    SA521–26.

14

After two days of testimony, the jury took 1 ½ hours to return a guilty verdict on all three counts.   SA515–16.   At sentencing, Judge Linares imposed an aggregate prison term of 480 months.   SA527–28.[13]   This timely appeal followed.   SA534.

## SUMMARY OF ARGUMENT

The District Court committed no error in handling Schaffer's trial.   It correctly denied his motion to suppress his external drive and the copy made of his laptop's hard drive.   That denial rested on the court's rejection of his claim that suppression was warranted on account of the Government's failure to preserve the original laptop.   Schaffer argued that the failure amounted to a violation of due process, but as the District Court found, the Government's failure was not intentional.

Under Supreme Court precedent, Schaffer had to proffer evidence showing that the laptop had exculpatory value, the laptop could not be replaced with comparable evidence, and the Government acted in bad faith. Schaffer proffered no evidence to satisfy any of these requirements.   Nor did

---

[13] Schaffer had a total offense level of 43 and a criminal history category of VI.   PSR ¶ 181; StR1.   Based on that score, he faced a guideline imprisonment range of 960 months.   PSR ¶¶ 180–81; StR1.   Schaffer does not appeal his sentence.

he contest the veracity of the agents and prosecutor who submitted sworn statements supporting the Government's denial of bad faith.   Those statements established that the laptop contained solely incriminating evidence, that the duplicate image previously taken of the laptop was a comparable substitute for the missing original, and that the laptop's mishandling was inadvertent.   Schaffer's strategic decision not to counter the Government's proffer of evidence was fatal to his defense then and continues to undercut his claims on appeal.

Now, Schaffer must show that the District Court committed clear error in making its three findings.   But it is a burden he cannot satisfy given the record evidence.   He raises no challenge to the first two findings, which amounts to a concession that the District Court made the right call on those points.   And his challenge to the court's third finding—the determination that the Government did not act in bad faith—cannot be credited because it is predicated on a misrepresentation that the laptop was the only piece of evidence that went missing.   As the Government explained to the District Court, the laptop was one of *three* devices that regrettably could not be found. That record undermines any suggestion that the Government chose to preserve certain pieces of evidence and not others.   Because Schaffer cannot satisfy his

burden to show clear error, this Court should reject his challenge and defer to the District Court's finding that the Government did not act in bad faith.

This Court should likewise reject Schaffer's contention that the evidence was insufficient to support his 18 U.S.C. § 2251(a) convictions for producing child pornography.   Schaffer claims that, contrary to the statute's interstate commerce requirement, the Government did not prove that he reproduced the videos and images in question on his laptop and external hard drive.   But the trial record is replete with evidence showing that Schaffer exercised exclusive control over the pornographic depictions he created and over his laptop and external drive.   That evidence comes from the victims, who testified that Schaffer threatened to harm them or members of their family if they reported his conduct.   It comes from the agents who found Schaffer's devices, searched them, and discovered information linking them to Schaffer.   Evidence of Schaffer's exclusive control also comes from the actual videos and images that were admitted at trial.   Together, all of this evidence gave the jury reason to believe that Schaffer produced child pornography on his laptop and external drive.   On appeal, that record provides substantial evidence to uphold the jury's § 2251(a) verdicts.

Schaffer's convictions should therefore be affirmed.

17

# ARGUMENT

## I.    THE RECORD BEFORE THE DISTRICT COURT CONTAINED CREDIBLE, UNCONTESTED EVIDENCE SUPPORTING THE GOVERNMENT'S DENIAL OF BAD FAITH.

**Standard of Review:**    "[A] district court's holding that [a defendant's] due process rights were not violated by the government's failure to preserve potentially exculpatory evidence is reviewed *de novo*."    *U.S. v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015).    A district court's finding that the Government did not act in bad faith is reviewed for clear error.    *Id.*; *U.S. v. McNealy*, 625 F.3d 858, 868–69 (5th Cir. 2010); *U.S. v. Beckstead*, 500 F.3d 1154, 1159 (10th Cir. 2007).

In denying Schaffer's motion to suppress the drives containing his collection of child pornography, Judge Linares correctly rejected his claim that his due process rights were violated on account of the Government's failure to preserve his original laptop.    Consistent with the record, the court determined that the Government did not act in bad faith when circumstances beyond the control of the trial prosecutors and agents in this case led to the disappearance of the laptop.    SA120–22.[14]    Schaffer contends that Judge Linares erred in reaching that conclusion, but his claim lacks merit.

---

[14]    Contrary to Schaffer's representation that the District Court never addressed the issue, DB9, the court's February 24, 2017 opinion shows that the court resolved the issue in the Government's favor and saw no need to reconsider its ruling when Schaffer raised it through new counsel later that year, SA119–22.

18

## A.    Legal Standard

Generally, the Due Process Clause of the Fourteenth Amendment requires the Government to disclose exculpatory evidence and holds the Government accountable for even inadvertent failures to do so.    *See California v. Trombetta*, 467 U.S. 479, 486 (1984); *Brady v. Maryland*, 373 U.S. 83 (1963). But "the Due Process Clause requires a different result when we deal with the failure of the [Government] to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."    *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *see Trombetta*, 467 U.S. at 488.    This is because it is far too difficult for a court to "divin[e] the import of materials whose contents are unknown and, very often, disputed."    *Youngblood*, 488 U.S. at 58 (quoting *Trombetta*, 467 U.S. at 486).    Moreover, the Supreme Court has cautioned, it would be unreasonable to impose on police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance."    *Id.*

Thus, a defendant who claims that he has been denied due process on account of the Government's failure to preserve potentially exculpatory evidence must overcome several hurdles.    As this Court and other appellate

courts have recognized, "*Trombetta* and *Youngblood* together established a tripartite test to determine whether a defendant's due process rights have been infringed by law enforcement's failure to preserve evidence." *U.S. v. Fema*, 9 F.3d 990, 993 (1st Cir. 1993) (citing cases from this Circuit, the Seventh Circuit and the Second Circuit); *accord Zaragoza-Moreira*, 780 F.3d at 977.

Schaffer has failed that test. It requires him first to show that the evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed." *Trombetta*, 467 U.S. at 489; *accord Youngblood*, 488 U.S. at 58; *U.S. v. Jackman*, 72 F. App'x 862, 866 (3d Cir. 2003) (not precedential). Second, he must show that he was prejudiced by the loss—*i.e.*, he must show that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. Third, he must show that the Government acted in bad faith. *Youngblood*, 488 U.S. at 58; *accord Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004); *U.S. v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993) (analogizing the destruction of drugs whose weight affects a defendant's sentencing exposure to the prosecution's failure to preserve potentially

exculpatory evidence).[15]    Schaffer cannot establish any of these requirements, much less all of them.

### B.    Schaffer Does Not Contest The Findings That His Laptop Lacked Ascertainable Exculpatory Value And That The Information Contained On It Was Preserved In A Comparable And Accessible Form.

Schaffer has effectively conceded that he cannot satisfy the first two prongs of his due process claim.    He raises no challenge to the District Court's finding that his laptop lacked exculpatory value that was apparent before the laptop went missing.    DB8–14 (Point I).[16]    As Judge Linares observed, Schaffer offered no argument that the laptop contained exculpatory information.    SA120.    By contrast, the Government—both at oral argument

---

[15] Schaffer disagrees with *Youngblood*'s bad faith requirement, but he is nevertheless bound by it.    Citing to a law review article that has never been cited in a federal case, he argues that *Youngblood* "has come under increased criticism."    DB9–10 (citing Norman C. Bay, *One Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith*, 86 WASH. U. L. REV. 241 (2008)).    He cites no federal case to support this claim, nor could he, because none exists.    In fact, his representation conflicts with the very article on which he relies.    There, the author acknowledged that "*Youngblood* retains its vitality on the federal level, as the Supreme Court has reaffirmed the bad faith standard."    Bay, *supra*, at 259 & n.138 (citing *Fisher*, 540 U.S. 544).

[16] Mindful of its duty to make factual findings, the District Court specifically invited the parties to submit documentation supporting their arguments on the question of due process.    SA32–33.

and in its briefing to the District Court—argued that the laptop contained

incriminating information as evidenced by the pornographic videos of Allison

and Ashley retrieved from the duplicate.   SA5, 34.   It additionally urged the

court to consider that at his prior federal trial, Schaffer did not object to

admission of the physical laptop nor did he challenge the admission of various

incriminating videos that agents had recovered from the same duplicate.   SA5,

34, 256.[17]   The record therefore supported Judge Linares's conclusion that the

laptop possessed no ascertainable exculpatory value.

Schaffer also raises no challenge to the finding that his laptop was

replaceable.   DB8–14 (Point I).   In support of that conclusion, Judge Linares

relied on Agent Simonello's sworn statement that he had created a forensic

image of the hard drive within the laptop and had generated a report

confirming its authenticity.   SA120.[18]   That reliance was proper, especially

given that Schaffer's computer experts found no reason to dispute those results.

*See* SA36–38, 388–89.   If they had, Schaffer certainly would have called on

---

[17] Schaffer saw no need to retain an expert to examine the laptop in preparation for his E.D.N.Y. case.   *See* SA26–27.

[18] The Government included a copy of that report in discovery in 2013, long before the laptop went missing.   SA2.

them to report their findings to the District Court.   Absent competing

evidence to the contrary, the evidence proffered by the Government

established that the evidence relevant to Schaffer's prosecution had been

preserved in the forensic copy of the laptop drive.   Schaffer's failure to raise a

genuine question regarding the copy's authenticity thus undercut any argument

he could have made that he was prejudiced by not having access to comparable

evidence.

### C.    The District Court's Determination That The Government Did Not Act In Bad Faith Was Correct.

The only factual finding Schaffer contests is Judge Linares's

determination that the Government did not act in bad faith, but his opening

brief falls short of demonstrating that the court clearly erred in doing so.

DB8–14 (Point I).   Factual findings are clearly erroneous only when "the

reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been" made.   *U.S. v. Pelullo*, 173 F.3d 131, 135

(3d Cir. 1999) (internal quotation marks omitted).   The standard requires

upholding the District Court's determination that there was no bad faith

"unless [that determination] (1) is completely devoid of minimum evidentiary

support displaying some hue of credibility, or (2) bears no rational relationship

23

to the supportive evidentiary data." *U.S. v. Antoon*, 933 F.2d 200, 204 (3d Cir. 1991) (internal quotation marks omitted).

To establish bad faith, a defendant must show that there has been "official animus" towards him or a "conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488; *see Youngblood*, 468 U.S. at 58 (confining bad faith requirement to "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant"). Bad faith thus "turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed" and is considered to "dovetail[] with the first part of the *Trombetta* test." *Youngblood*, 468 U.S. at 56 n.*; *Zaragoza-Moreira*, 780 F.3d at 977; *accord Jackman*, 72 F. App'x at 866.

The Fifth Circuit's application of *Youngblood* in *U.S. v. McNealy*, 625 F.3d 858 (5th Cir. 2010), demonstrates that more than enough evidence was available to credit the Government's denial of bad faith. In *McNealy*, the Fifth Circuit had occasion to assess whether the district court clearly erred in concluding that the government did not act in bad faith when it destroyed the defendant's computer, which contained 9,000 pornographic images of children. The court found no such error based on evidence that the computer

24

was destroyed in connection with a miscommunication that occurred between the government's asset forfeiture division and the prosecution team.    *Id.* at 869–70.    Unbeknownst to the trial prosecutors, once the computer was seized the asset forfeiture division filed an action for its forfeiture.    The action resulted in a default judgment because the division failed to properly notify the defendant about the proceeding.    That record gave the Fifth Circuit reason to uphold the finding that the computer had been destroyed because of miscommunications between divisions of the government and not because of bad faith.    *Id.* at 870.

Judge Linares's bad faith assessment in this case comports with *Trombetta*, *Youngblood*, and *McNealy*.    Below, the Government submitted sworn statements from the three principal individuals who handled Schaffer's laptop between the time it was imaged and the time it was retrieved for trial in the Eastern District of New York:    Secret Service Agent Simonello, HSI Special Agent Mancene, and an Assistant U.S. Attorney from the Eastern District of New York.    SA80–101.    As part of his statement, Agent Simonello attached a copy of the receipt used to record who took custody of the laptop

25

and when.[19]   SA86–93.   The time period covered by the receipt was from

June 3, 2012, the date of seizure, to June 26, 2014, the date it was retrieved for

Schaffer's E.D.N.Y. trial.   SA85.   All of this evidence showed that, like the

trial prosecutors in *McNealy*, neither the agents who investigated this case nor

the New Jersey Assistant U.S. Attorneys who prosecuted it had control over

the laptop when it disappeared.   Because Schaffer offered no competing

evidence to challenge the Government's proffer, the District Court could rely

on all of it to reach the conclusion that losing Schaffer's laptop was not the

result of police animus toward Schaffer or a conscious effort to suppress

information that could exonerate him.

Schaffer seems to have forgotten that at one time he, too, accepted the

Government's denial of bad faith.   When the Government moved the District

Court to make a record that it did not act in bad faith, Schaffer, through his

original attorney, told the court that he "d[id] not question the veracity of the[]

---

[19]   The names of HSI Special Agents Scott Michael Delaney and Jeffrey
Knopf appear on the custody receipt along with the names of Agent Simonello,
Agent Mancene, and the Assistant U.S. Attorney who tried the Brooklyn case.
SA85.   The jury heard all four agents testify about their handling of Schaffer's
laptop.   SA416–20 (Agent Delaney and Government Exhibit 602, a
photocopy of the evidence room log book); SA422–25 (Agent Knopf and log
book entries for Agent Simonello and Agent Mancene); SA427 (Agent
Simonello); SA471, 475 (Agent Mancene).

[Government's sworn] statements" and that "it is clear that the [G]overnment did not act in 'bad faith' when it lost the laptop." SA102. Schaffer never withdrew that concession, even when he had the opportunity to do so through new counsel. But even if he had, the record contained more than enough reliable evidence to credit the Government's claim that it did not act in bad faith.

Like the record before the Fifth Circuit, the record in this case should give this Court confidence that Judge Linares's finding was not only supportable, but correct. In assessing the record before it, the Fifth Circuit found that there was no evidence that the Government's attorneys "intended to destroy the evidence in order to impede [the defendant's] defense" and that it was "highly likely that all relevant evidence was preserved in the forensic images of the hard drives." *McNealy*, 625 F.3d at 870. The same is true of the record here. The Government gained no tactical advantage by losing a laptop that had no exculpatory value. And by making an exact copy of the hard drive before anything happened to it, Agent Simonello preserved all of the evidence contained in it that would be relevant to Schaffer's prosecution.[20]

---

[20] Agent Simonello duplicated the hard drive immediately upon receiving the search warrant and without prompting from Schaffer. (It is

Simply put, the record before the District Court makes it impossible for

Schaffer to show clear error.

Schaffer contends that he has shown bad faith, but the record belies that

assertion.   As evidence of bad faith, he has represented that the laptop was the

only piece of evidence missing from the collection of evidence stored at the

U.S. Attorney's Office in Brooklyn.   DB10–11.   He is wrong.   Schaffer's

laptop was stored in a box that also contained two video cameras recovered

from Schaffer's office.   SA3, 25–29.   The entire box, including the cameras,

---

worth noting that Schaffer never once asked for the return of the devices seized
by the agents, even after he was indicted.   SA109; *see* SA26–27 (oral argument
inquiries to prior defense counsel about whether a preservation request was
made in the E.D.N.Y. case).)   That act of preservation distinguishes this case
from *Zaragoza-Moreira*, 780 F.3d 971, where the government neglected to take
the necessary steps to ensure preservation of the video of the defendant's
contact and interview with law enforcement at the U.S.-Mexico border.
Weeks before the evidence was destroyed in the normal course of business, the
defendant requested that it be preserved.   The footage, the Ninth Circuit
found, would have supported the defendant's defense that she was not guilty of
violating the drug importation laws because members of a dangerous drug
cartel had forced her to transport drugs across the border.   *Id.* at 978.   The
court inferred bad faith from evidence establishing that the arresting agent
knew the exculpatory value of the video before it was destroyed.   *Id.* at 978–
82.   The exculpatory nature of the lost evidence negated the government's
claim of good faith in that case, but the inculpatory nature of Schaffer's laptop
and the availability of a duplicate image of it provide no basis for discrediting
the Government in this case.

could not be located.   SA25–29.   Thus, any suggestion that the Government

singled out the laptop for loss cannot be credited.

In light of those facts, Schaffer's reliance on *U.S. v. Vaughn*, Crim. No.

14-23 (JLL), 2015 WL 6948577 (D.N.J. Nov. 10, 2015), an unpublished

district court decision, is misplaced.   DB11–12.   There, the defendant moved

to dismiss an indictment charging him with drug offenses because a New

Jersey police officer had deleted some of the text messages he had exchanged

with a cooperating witnesses.   In that case, Judge Linares precluded the

government from using any text message from its investigation—including

those between the alleged co-conspirators—in part because the officer chose to

preserve some message and not others.   *Vaughn*, 2015 WL 6948577, at *19.

The officer's differential treatment of the text messages led Judge Linares to

question the integrity of the government's investigation.   *See id.*

But Judge Linares found no similar issues here.[21]   The same accusation

simply cannot be leveled against the Government in this case given the

---

[21] Had he found bad faith or prejudice of some kind, Judge Linares
likely would have imposed an appropriate sanction.   In *U.S. v. Suarez*, Crim.
No. 09-932 (JLL), 2010 WL 4226524, at *7 (D.N.J. Oct. 22, 2010), he refused
to suppress certain testimony and recordings on account of the Government's
failure to preserve text messages.   That decision was predicated on his finding
that the Government had not lost or destroyed the messages in order to deprive

circumstances surrounding the disappearance of the laptop.    Judge Linares's

decision to deny relief was therefore proper here.

Like his misguided reliance on *Vaughn*, Schaffer cannot plausibly seek

reversal by likening the loss of his laptop to the regrettable circumstances in

*U.S. v. Dennison*, No. 2:13CR-805-DAK, 2014 WL 7140044 (D. Utah Dec. 12,

2014).    DB12.    The defendant in that case was charged with health care fraud

crimes.    While executing a search warrant at her clinic, agents made copies of

the computers she used to do business but never seized the computers

themselves.    The computers remained in the defendant's possession until she

eventually disposed of them in the normal course of closing down the clinic.

During pre-trial discovery, the government realized that all of the evidence it

had copied from the computers was lost or corrupted.    The district court was

unwilling to excuse the inadvertent loss of evidence, however, because there

was a reasonable probability that computerized documents memorializing the

---

the defendants of evidence.    *Id.*    Judge Linares, did, however, issue an
adverse inference instruction against the Government because the loss
compromised the defendants' ability to cross-examine the cooperating witness.
*Id.* at *8.    *Vaughn* and *Suarez* thus demonstrate that Judge Linares knows how
to take action when he believes that a defendant has been prejudiced by lost or
destroyed evidence.    He imposed no sanction in this case because the facts did
not support one.

day-to-day operations of the clinic contained exculpatory evidence. *Dennison*,
2014 WL 7140044, at *7. In addition, the court found that comparable
evidence did not exist to enable the defendant to prepare a meaningful defense
against allegations of fraud. *Id.*

The same cannot be said of the record in this case. As explained above,
Schaffer does not dispute the District Court's well-supported findings that his
computer had no exculpatory value and that the information contained on it
still existed in a comparable form. Because nothing consequential about this
case resembles *Dennison*, Schaffer's reliance on it cannot be taken seriously.

Perhaps aware that he cannot satisfy any of the three conditions required
to establish a due process violation, Schaffer resorts to a line of argument that
does nothing but obscure the clear error analysis this Court must undertake.
He argues—as he alternatively posited below—that "irregularities" in other
aspects of the Government's investigation lend credence to his belief that the
Government lost his laptop in bad faith. DB10–13; SA102, 121, 219–20, 364–
65. According to him:

- Agents searched his laptop prior to issuance of a search warrant;

- Agent Simonello's duplication efforts were flawed because the
  forensic copy he made was an image of the drive that was inside
  the laptop on the date it was searched (July 31, 2012) and not an
  image of the drive at the time it was seized (June 3, 2012);

31

- Agents must have illegally searched the cell phone they recovered from him because his voicemail was called 47 times while in their possession but before they had obtained a warrant;

- A logging discrepancy exists among the entries documenting the removal and return of certain items to and from the evidence locker;

- There are general gaps in the chain of custody regarding both the laptop and photos;

- The agents who searched his office took "screen shots" of his computer before obtaining a specific warrant to search his devices; and

- His statement to law enforcement that his user account required a password is inconsistent with a computer report indicating that no password was required for his computer.

DB12–13.  But none of these claims, even if true, remotely bears on the

question of whether, *years* later, the Government lost his laptop in bad faith.[22]

Schaffer hopes that by casting unsubstantiated aspersions about the

Government's investigation, he can lure the Court into crediting his claim of

---

[22] Below, the Government successfully disputed the first five of these allegations.  SA179–98, 236–371.  Schaffer raised the latter two allegations for the first time in his reply brief to the District Court and thus failed to properly raise them to that court.  SA382–83.  Judge Linares did not address them, which was within his discretion not to consider.  *See U.S. v. Prange*, 771 F.3d 17, 27 (1st Cir. 2014) ("[T]he reply brief is not the proper place to raise . . . new arguments."); *U.S. v. Brennan*, 994 F.2d 918, 922 n.7 (1st Cir. 1993) (noting that arguments raised for the first time in a reply brief "comes too late and need not be addressed" (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 354 (1st Cir. 1992))).

bad faith.   The Court need not get entangled in the web Schaffer has created.
The holdings of *Trombetta* and *Youngblood* are clear and their application
straightforward.   They require a court to evaluate the missing evidence in
question and the circumstances giving rise to its destruction or loss.   The
holdings do not apply to unrelated evidence in the case nor do they apply to
unrelated conduct by law enforcement.   Here, the missing evidence that this
Court must evaluate is Schaffer's laptop.   *That* is the evidence that must
possess exculpatory value.   *That* is the evidence that must not exist in
comparable form.   And it is the loss of *that* evidence that must be examined
for bad faith.

To the extent that Schaffer's speculative allegations of agent misconduct
can be read as a challenge to the sufficiency of the Government's evidence, the
challenge should be dismissed because Schaffer did not pursue the claim in his
opening brief as required by Rule 28 of the Federal Rules of Appellate
Procedure.   To preserve an issue for appellate review, an appellant must
present supporting "contentions and the reasons for them, with citations to the
authorities and parts of the record on which the appellant relies."   Fed. R.
App. P. 28(a)(8)(A); *U.S. v. Jackson*, 849 F.3d 540, 555 n.13 (3d Cir. 2017).
Schaffer did not comply with these requirements.   He offered only a passing

33

reference to each fault he found with the Government's investigation.   DB12–

13.   Having failed to construct an argument about those faults, Schaffer has

forfeited his right to raise them before this Court.

### D.    Schaffer's Request For An Evidentiary Hearing Was Properly Denied.

Schaffer continues to request that an evidentiary hearing be held to

determine whether suppression is warranted, but neither the record below nor

Schaffer's opening brief on appeal provides a legitimate basis for granting one.

A defendant is not entitled to a hearing until he presents a "colorable claim"

for relief.   *U.S. v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994).   To be "colorable," a

defendant's motion must consist of more than mere allegations of misconduct.

*U.S. v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996).   As the Supreme Court has

cautioned, "claims that taint attaches to any portion of the Government's case

must satisfy the trial court with their solidity and not be merely a means of

eliciting" the prosecution's case in advance of trial.   *Nardone v. U.S.*, 308 U.S.

338, 342 (1939).   "[A]llegations which are general and conclusory or based

upon suspicion and conjecture will not suffice" to meet the *Nardone* standard of

"solidity" for ordering an evidentiary hearing.   *Cohen v. U.S.*, 378 F.2d 751,

760 (9th Cir. 1967).

In light of the foregoing principles, the District Court's decision to deny Schaffer's request for a hearing was proper.   He proffered zero evidence in support of his assertion of bad faith.   And nothing he presented in his opening brief provides a basis for reaching a different conclusion.

\*    \*    \*    \*

The record fully supports the District Court's decision not to suppress Schaffer's external hard drive or the duplicate image made of his laptop.   It was Schaffer who alleged that he lost the opportunity to present a meaningful defense on account of his laptop's disappearance.   Accordingly, Schaffer was the one who had to convince the District Court that his due process claim had merit, especially his claim of bad faith.   But the record has provided no basis for him to do so.

## II.   SUBSTANTIAL TRIAL EVIDENCE ESTABLISHED, BEYOND A REASONABLE DOUBT, THAT SCHAFFER REPRODUCED CHILD PORNOGRAPHY ON HIS LAPTOP AND EXTERNAL HARD DRIVE.

**Standard of Review**:   Plenary. *U.S. v. Caraballo-Rodriguez*, 726 F.3d 418, 424 (3d Cir. 2013) (*en banc*).

The District Court correctly denied Schaffer's motion to acquit him of Counts 1 and 2 of the indictment, which charged him with producing pornographic images of Allison and Ashley in violation of 18 U.S.C. § 2251(a). Schaffer concedes that he molested the girls and took the images, but contends

35

there was insufficient evidence to prove that he transferred the images in question to his laptop and external drive.   DB17.   The trial evidence refutes that argument.

## A.    Legal Standard

The dispositive question to any sufficiency-of-the-evidence claim is this: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *accord U.S. v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002).   If "substantial evidence" is available to support the jury's decision, the verdict must be affirmed.   *Caraballo-Rodriguez*, 726 F.3d at 430 (quoting *U.S. v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)).

The sufficiency-of-the-evidence standard is one that is meant to give deference to a jury's findings.   *U.S. v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996).   It imposes a duty on a reviewing court to "draw all reasonable inferences in favor of the jury verdict."   *Id.*   In discharging that duty, this Court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for that of the jury."   *Caraballo-Rodriguez*, 726 F.3d at 430 (quoting

36

*U.S. v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)).   While the "evidence does

not need to be inconsistent with every conclusion save that of guilt," the

evidence, as a whole, must cross "the threshold of bare rationality."   *Id.* at 431

(quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)); *U.S. v. Dent*, 149 F.3d

180, 188 (3d Cir. 1998).

### B.    Evidence That Schaffer Exercised Exclusive Control Both Over The Videos And Images He Created And Over The Electronic Devices He Used Proves That He Produced Child Pornography.

The trial evidence supporting Schaffer's 18 U.S.C. § 2251(a) convictions

not only crossed the proverbial threshold of bare rationality, it exceeded it.

Section 2251(a) "criminalizes (1) sexually exploiting a minor 'for the purpose

of producing a visual depiction of' that sexual exploitation (2) if," as the

Government argued to the jury, "'that visual depiction was produced or

transmitted using materials that have' a nexus to interstate or foreign

commerce."   *U.S. v. Lively*, 852 F.3d 549, 552 (6th Cir. 2017) (quoting 18

U.S.C. § 2251(a)).[23]   Schaffer has never disputed that sufficient evidence was

---

[23] Section 2251(a) provides, in relevant part:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), if such person

available to prove that he sexually abused Allison and Ashley when they were
under the age of 18.   DB17; *see* SA510 (Defense summation:   "I maintain that
because you saw those videos, and it is pretty evident that it was my client.");
SA511 (Defense summation:   "Every officer here that testified that you heard
was credible.   Every witness that you heard testify was credible.").   Nor has
he ever disputed that sufficient evidence was available to prove that the
materials the Government accused him of using to produce pornographic
images of the girls—his laptop and external hard drive—were manufactured
outside the United States.   SA487–88.

What Schaffer has never been willing to accept, however, is the trial
evidence demonstrating that he produced the videos and images of Allison and

---

knows or has reason to know that such visual depiction will be
transported or transmitted using any means or facility of interstate
or foreign commerce or in or affecting interstate or foreign
commerce or mailed, *if that visual depiction was produced or transmitted
using materials that have been mailed, shipped, or transported in or affecting
interstate or foreign commerce by any means, including by computer*, or if
such visual depiction has actually been transported or transmitted
using any means or facility of interstate or foreign commerce or in
or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (emphasis added).   As the Sixth Circuit has explained,
§ 2251(a)'s interstate commerce requirement "contains three jurisdictional
hooks."   *Lively*, 852 F.3d at 559.   Here, the Government indicted Schaffer
under the second hook, italicized above.

Ashley on those devices.    DB15; SA486–89.    Specifically, he claims that the

Government could not have satisfied its burden without "provid[ing] any *direct*

*link* . . . that [he] transferred recorded images to the laptop or the external hard

drive."    DB17 (emphasis added).    Schaffer's claim fails as a matter of law.

While there is no dispute that a person can be convicted of § 2251(a) by

"load[ing] an image onto a [hard] drive from the internet or another source,"

Schaffer appears to challenge the Government's authority to prove that fact by

circumstantial evidence.    *U.S. v. Burdulis*, 753 F.3d, 255, 262 (1st Cir. 2014);

*accord Lively*, 852 F.3d at 561 (collecting cases).    The Government was not

required to produce direct evidence that Schaffer loaded child pornography on

his devices.    It is well established that the Government can meet its burden of

proof by presenting circumstantial evidence so long as inferences drawn from

that evidence "bear a 'logical and convincing connection to established fact.'"

*Caraballo-Rodriguez*, 726 F.3d at 425, 431 (quoting *U.S. v. Cartwright*, 359 F.3d

281, 291 (3d Cir. 2004)); SA498 (jury instructions).    Thus, like any jury, the

jury in this case was entitled to rely on circumstantial evidence to assess

whether the Government proved § 2251(a)'s interstate commerce requirement.

The record contains ample evidence from which a juror could infer that

Schaffer loaded the images and videos he took of Allison and Ashley onto his

39

laptop computer and external hard drive.   In *U.S. v. Koch*, 625 F.3d 470, 478–49 (8th Cir. 2010), the Eighth Circuit held that proof that a defendant had exclusive control over a computer containing images of child pornography created by him was sufficient to prove that he possessed child pornography in violation of federal law.   Application of that holding makes sense in the production context as well:   Proof that a defendant has exclusive control over (1) the electronic devices containing child pornography (2) created by him should be sufficient to prove that the defendant produced child pornography on those devices in violation of § 2251(a).

The jury reasonably inferred from the Government's evidence that Schaffer was responsible for loading the pornographic images of Allison and Ashley onto the devices presented at trial.   Some of that evidence came from the agents who testified about finding Schaffer at his office when they arrived to search it and about recovering his laptop, external drive, and a Fugitive Recovery photo identification card in his name.[24]   SA469.   Other evidence

---

[24] The holder of a legitimate Fugitive Recovery ID card is a bona fide Fugitive Recovery Agent—*i.e.*, a bounty hunter—who is "hired or contracted by a Bail Bond Company or Surety to act as their Agent for the purpose of locating and apprehending a Fugitive that has failed to appear in court or has otherwise violated the Bail bond Contract or Release Conditions."   *See* Nat'l

came from testimony from Agent Simonello that the laptop had a password-protected user account named "Greg" that was last accessed on June 3, 2012, the very day agents searched Schaffer's office.   SA430, 433–35.   The account contained a phone bill and business record with Schaffer's name and business address on them, a file of the same Fugitive Recovery card recovered by agents in physical form, and a photo of Schaffer in a Navy uniform.   SA435–36. Schaffer's Navy photo also appeared on Schaffer's external drive.   SA458–59.

The jury also could have inferred Schaffer's guilt from the actual photos and videos Schaffer took of the girls—images he admits to have created. DB17.   As the District Court noted, some of the videos captured Schaffer looking directly into the camera and adjusting it.   SA514.   One of the videos recorded him speaking to the victim about a modeling agency and how the victim would be photographed.   SA454 (playing Government Exhibits 404A, 404B, 404C); SA514.   Additionally, the jury heard testimony that various versions of the videos were found in multiple locations on the recovered laptop, including the laptop's desktop screen.   SA450.   That same material appeared on Schaffer's external drive, which was not coincidental given that

---

Ass'n of Fugitive Recovery Agents, FAQ, *available at* www.fugitive-recovery.org/faq.htm (last visited on Dec. 4, 2018).

the drive had received information from Schaffer's laptop as late as May 2012. SA458–59.

The victims' powerful testimony corroborated all of this evidence, providing the jury with even more reasons to hold Schaffer accountable for producing child pornography.   Both Allison and Ashley testified that they were alone with Schaffer when he molested them.   SA468, 478, 481–84.   And Ashley testified that she was alone with Schaffer when he forced her to pose for photographs he took of her in a hotel room.   SA483–85.   Both girls identified themselves in photographs and in various screen shots of the videos Schaffer had created.   SA478–85.

The most plausible inference to be drawn from all of this evidence is the one that the jury unanimously drew:   that Schaffer was the person who loaded the subject videos and images onto his hard drives.   Schaffer bears a "very heavy burden" to show that *no* reasonable juror could have drawn such an inference.   *Anderskow*, 88 F.3d at 251 (quoting *U.S. v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990)); *see Caraballo-Rodriguez*, 726 F.3d at 431 ("[T]here is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." (quoting *U.S. v. Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992))).   To

42

raise doubt about the jury's verdict, Schaffer argues that evidence was lacking to show that he exercised exclusive control over his laptop.   DB17.   He likens the Government's case-in-chief to the nuanced prosecutions in *Lively*, 852 F.3d 549, and *U.S. v. Lowe*, 795 F.3d 519 (6th Cir. 2015), but neither case supports his position.

The facts of this case are not analogous to the facts in *Lively*.   In *Lively*, the government established that the defendant sexually abused a minor for the purpose of producing the set of images found on the *memory card* that the defendant's associate used to capture the abuse.   852 F.3d at 562.   But the government failed to establish that the defendant abused the minor for the purpose of producing the set of images found on the *hard drive* that the defendant's associate used to store the images.   *Id.*   The interstate commerce link to the images on the hard drive could not be established, the Sixth Circuit held, because evidence had not been introduced proving that the defendant knew that his associate owned the computer in question or that his associate copied the images from the memory card onto that computer.   *Id.*   Nor was evidence introduced to establish that the defendant wanted his associate to send him the images electronically, *id.*, a fact that would have circumstantially

43

proven that the defendant expected the images to end up on a device capable of sending electronic messages.

Although the Sixth Circuit affirmed Lively's conviction, Schaffer nonetheless relies on the decision, hoping to latch on to the court's nondispositive ruling that one set of photos could not be used to convict the defendant.   In *Lively*, there were gaps in the government's case that justified that ruling.   Those gaps are not present here, however.   Lively could not be held liable for the actions of his associate because he neither knew nor had reason to know that the associate copied the images to his own computer.   By contrast, Schaffer *can* be held liable for reproducing sexually explicit depictions of the victims in this case because he was the only one involved in creating the depictions and likely the only person, other than the victims, who knew the depictions existed.   After all, Schaffer had forced them to perform sexual acts under threat of violence or blackmail and had made them promise never to tell anyone about their encounters.   SA454; *see supra* n.1; SA482, 484 (Schaffer's threats of violence and blackmail).[25]

------

[25] During an interview with Hudson County Prosecutor's Office, Allison recalled that Schaffer not only threatened to get her mother arrested, but "would also put a handgun on his desk and state, 'if you tell anybody, you're going to know what this does.'"   PSR ¶ 106, p. 25.

Schaffer's reliance on *Lowe* is equally misplaced.    In *Lowe*, an 18 U.S.C. § 2252(a) prosecution, sufficient evidence was lacking to determine whether the defendant, his wife or his minor son had downloaded child pornography to a laptop found in the defendant's home.    *Lowe*, 795 F.3d at 523–24. Although the laptop contained a single user account, the laptop's settings did not require users to enter a password to access the account or any of the laptop's files and programs.    In addition, no password was required to access the file-sharing program used to download and store the child pornography that was the subject of that prosecution.    "[W]ithout improperly stacking inferences," the Sixth Circuit held, "no trier of fact could infer . . . that the defendant knowingly downloaded, possessed and distributed the child pornography found on the laptop" in violation of federal law.    *Id.* at 523.

Unlike *Lowe*, the record in this case provided no basis for speculating that multiple users had access to Schaffer's devices.    Not a single witness testified that anyone other than Schaffer had access to his devices—the main drive of which was, contrary to Schaffer's representation, password-protected, DB17, SA433—and Schaffer's attempt to question why that was the case did

45

not convince a single juror to acquit him.[26]    And as explained above, no

evidence was presented to suggest that anyone other than Schaffer knew that

these videos and photographs existed, let alone that someone else transferred

them to the hard drives he used.    Just the opposite, evidence showed that

Schaffer intended to keep his interactions between Allison and Ashley a secret.

*See supra* n.1.

Viewed in the light most favorable to the Government, all of this

evidence showed that after taking pornographic photos and video footage of

Ashley and Allison, Schaffer reproduced those depictions on his laptop and

external hard drive.    Because a rational jury could have reached that

conclusion based on evidence that he exercised exclusive control both over the

depictions and over the physical drives, Judge Linares cannot be faulted for

denying Schaffer's motion for a judgment of acquittal.    And because that

evidence was sufficient to find Schaffer guilty of producing child pornography

beyond a reasonable doubt, this Court should not hesitate to affirm his

resulting convictions.

---

[26] During summation, defense counsel tried to get the jury to consider
what family members or employees of Schaffer's could have had access to his
devices.    SA512.

CONCLUSION

The Court should affirm all counts of Schaffer's conviction.

Respectfully submitted,

**CRAIG CARPENITO**
UNITED STATES ATTORNEY


By:    s/ Richard J. Ramsay
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102-2535
(973) 645-2700

Date:    December 4, 2018

### CERTIFICATE OF COMPLIANCE

I hereby certify that I am an Assistant U.S. Attorney for the District of New Jersey, that I am filing the attached Brief and Supplemental Appendix for Appellee, and:

(1) the Brief complies with the length limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 10,280 words;

(2) the Brief complies with the typeface and type style requirements of Fed. R. App. 32(a)(5) and (6) by using Microsoft WORD 2016's 14-point proportionally-spaced Calisto MT;

(3) the text of the PDF and paper copies of the Brief and Supplemental Appendix are identical; and

(4) the PDF copies of the Brief and Supplemental Appendix were prepared on a computer that is automatically protected by a virus detection program, namely a continuously-updated version of McAfee Endpoint Security 10.2, and no virus was detected.

By: s/ Richard J. Ramsay
Assistant U.S. Attorney

Dated:   December 4, 2018

## CERTIFICATION OF FILING AND SERVICE

I hereby certify that on December 4, 2018, I caused the Brief and Supplemental Appendix for Appellee to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) paper filing of an original and six paper copies of the Brief and Supplemental Appendix using postage-prepaid first-class mail.

I also certify that on December 4, 2018, I caused the Brief and Supplemental Appendix for Appellee to be served:

[X] by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on the following Filing User:

Thomas Ambrosio, Esq.
tambrosio@legal750.com

[X] by service of one paper copy by mail, on:

Thomas Ambrosio, Esq.
750 Valley Brook Avenue
Lyndhurst, NJ 07071

s/ Richard J. Ramsay
Assistant United States Attorney

Dated: December 4, 2018